RAMOS v. SUCCESSION OF CABÁN.

APPEAL from the District Court of Aguadilla.

No. 829.—Decided June 18, 1912.

NATURAL CHILDREN—ACTION TO CLAIM FILIATION—SUFFICIENCY OF COMPLAINT.—
In an action for the acknowledgment of a natural child it is unnecessary to allege specifically all the different acts of the father demonstrating the acknowledgment. Said acts should be shown, as they were in the case at bar, by the evidence taken during the trial.

ID.—ACTION TO CLAIM FILIATION.—In accordance with Law 11 of Toro, two facts must be established in an action to claim filiation: First, that the child was conceived or born when its parents could legally marry without dispensation, and, second, that the father acknowledged the child as his natural offspring.

ID.—ACTION TO CLAIM FILIATION.—Upon an examination of the evidence intro-
   duced at the trial of the case at bar this court held that having weighed it
   fully it was so clear and sufficient that the prayer of the complaint should be
   granted, and reversed the judgment appealed from.

The facts are stated in the opinion.

*Messrs. Augusto Malaret* and *José G. Torres* for appellant.

*Messrs. Carlos Franco Soto* and *José de Guzmán Benítez* for respondent.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This case is one of filiation.   It is alleged in the complaint:

"First. That the plaintiff was born on October 15, 1889, and is therefore of legal age, with capacity to sue and be sued, and that he is a resident of San Sebastián, within this judicial district.

"Second. That the defendant succession consists of Onorífera Cabán, of legal age, legitimate daughter of Juan Tomás Cabán, a resident of San Sebastián, within this judicial district.

"Third. That Juan Tomás Cabán, during his amorous intercourse with María Ramos, had by her a child called Prudencio Ramos, the plaintiff herein, who both publicly and privately was always treated by his father, Juan Tomás Cabán, as his son; and at the time of the plaintiff's conception and birth his aforesaid parents were unmarried and had legal capacity to contract marriage.

"Fourth. That Juan Tomás Cabán died on March 8, 1910."

Onorífera Cabán, through her counsel, answered the complaint in the following terms:

"1. She denies the first allegation of the complaint with reference to the date of the birth of Prudencio Ramos.

"2. She denies the second allegation of the complaint inasmuch as the succession of Juan Tomás Cabán is not composed exclusively of Onorífera Cabán.

"3. She denies absolutely that María Ramos has ever had any amorous relations with Juan Tomás Cabán, and that as a result of such relations they had had a child called Prudencio Ramos, and she consequently denies that the latter had ever been publicly and privately treated as his son by Juan Tomás Cabán.

"As new matter of defense, the defendant alleges: That María Ramos, at the time she conceived Prudencio Ramos, lived in *barrio* Pozas of San Sebastián, and in that *barrio* she was then a public woman who bestowed her favors on many persons who solicited them."

Trial having been had, the court, on November 2, 1911, rendered judgment dismissing the complaint with costs against the plaintiff. From this judgment the present appeal was taken.

The grounds upon which the judgment appealed from is based are two, viz:

(*a*) That the complaint does not state facts sufficient to constitute a cause of action, and

(*b*) That the evidence is insufficient, for it does not appear from it that the father had a deliberate intention of acknowledging the plaintiff as his son.

At the trial in the court below it was fully proven by the certificate of registration that the plaintiff was born on October 15, 1889, and both parties, through their counsel, have maintained before this Supreme Court, and such is the fact, that the substantive law regulating this case is Law 11 of Toro, in force at the date of the plaintiff's birth. Said law reads:

"And in order that there should be no doubt as to who are natural children we ordain and direct that those be deemed natural children whose parents, at the time of their birth or conception, were capable of marrying each other without dispensation, provided the child has been acknowledged by the father and he has had in his own house the woman by whom he begot it. When the aforesaid conditions are found in the child we order that he be deemed a natural child." 1 Llamas y Molina, *Comentario a las Leyes de Toro*, 207.

The party defendant did not raise in this case, nor is there really involved therein, any question of prescription, and the essential points to discuss and determine are, as we have indicated, whether the complaint is sufficient and whether the facts alleged therein were fully borne out by the evidence.

In our opinion the complaint is sufficient. We are told therein that Juan Tomás Cabán, during his amorous intercourse with María Ramos, begot the plaintiff, Prudencio, who both publicly and privately was always treated by his father, Juan Tomás Cabán, as his own child; and that at the time of the conception and birth of the plaintiff his aforesaid parents were single and had capacity to contract matrimony.

These facts constitute the essential allegations that must be proven in a case of this nature. The various acts performed by the father indicating acknowledgment should have been, and were, the object of the evidence during the trial, such evidence, moreover, having been taken without any opposition by the adverse party.

As to the second ground, we have carefully examined all the evidence, and it is so clear and shows so absolutely that Juan Tomás Cabán could and did acknowledge the plaintiff as his natural child that it must be concluded that the lower court committed a manifest error in weighing the same.

In conformity with the law applicable hereto, two facts must be established in a case of this nature.

1. That the child was conceived or born when its parents could legally marry each other without dispensation, and

2. That the father acknowledged him as his natural son.

Let us look into the first fact.

It is proven by the testimony of the witnesses of both parties that Juana María Ramos, the mother of the plaintiff, lived in *barrio* Pozas, San Sebastián, and that Juan Tomás Cabán resided in the town.

Witness, Juan Pereira, 54 years of age, testified that "he has always lived in Pozas; that he has known Juana María Ramos since she was a child 10 or 11 years old; that he was a neighbor of hers, and he used to go to her house for kindling. He had known Juan Tomás Cabán for 30 years. He noticed that he frequently passed that way and was almost always hunting. He saw the girl and liked her and began to court her, until finally she fell."

Juana María Ramos said: "That since she was a little girl she had known Juan Tomás Cabán and had had seven children by him; that Cabán had not married her, but treated her as if they had been married by the church; that he afterwards married another woman whose name she does not remember, but that before his marriage she had had five children by him, including Prudencio, who was born while Cabán was a bachelor; that Prudencio was born in *barrio* Pozas while she and Juan Tomás Cabán were single."

And Domingo Liciaga stated: "That he is sure that when Prudencio was born Juan Tomás Cabán was unmarried."

The adverse party did not object to the taking of this evidence nor did it contradict it when producing its own, for which reason and having, moreover, in mind the result of the other evidence taken, it must be concluded that at the time the plaintiff was conceived and born his parents could legally have contracted marriage without the necessity of any dispensation.

Let us examine the other fact. With respect to the acknowledgment the evidence is ample. We have already heard Juana María Ramos' testimony, wherein she avers, moreover, that Prudencia used to call Tomás Cabán "papa" in public, and that he called him "son"; that she and Cabán were relatives; that Cabán and she had lived as man and wife some 30 years, etc.

Francisco Ramos, 25 years of age, testified that he was a natural son of Cabán and Juana María; that Prudencio is also a son of Cabán, and that Cabán and Prudencio were wont to call each other father and son publicly. This witness identified the signature of Juan Tomás Cabán attached to a paper addressed to Prudencio, which reads as follows: "Prudencio: I hope you will come to town this afternoon so as to take charge of the sale of a heifer. I shall go to your place this evening. Your father, Juan T. Cabán." To prove the authenticity of this document another one was produced which apparently contained the signature of Cabán. The document

was admitted in evidence, and it does not appear that the party defendant objected to its admission nor that it had attacked it as spurious.

Domingo Liciaga stated that he was a natural son of Cabán's, but not by Juana María; that Cabán had had seven children by Juana María, whom the witness used to treat as brothers at the suggestion of his own father.

Andrés Vera stated that he was sure Prudencio was the child of Cabán, because he had been told so by the latter; that he had had amorous intercourse for two years with a daughter of Juana Ramos and of Cabán, and that the latter had said to him one day: "Look here, Andrés, you must know that I wish my daughters to marry industrious men so that they may not suffer on the morrow." To which he had replied that "he intended to lead her to the altar," whereupon he consented.

José B. Borrego, 48 years of age, a native and resident of *barrio* Pozas, lived near Juana María Ramos and knew that Cabán had amorous relations with her, which lasted about 30 years; that Cabán and Prudencio treated each other as father and son, for he had on several occasions heard the boy call him "papa," and he the boy "son"; that he is sure that Cabán was the only one who supported Juana Ramos, and he had seen Prudencio publicly asking Cabán's blessing.

Segundo Cortés is acquainted with the public and well-known relations existing between Cabán and Juana Ramos, and with the fact that Cabán used to address Prudencio as "son," while Prudencio addressed Cabán as "father."

Victoriano Latorre, 57 years of age, said that he had always lived in Pozas; that he had known Juana María Ramos since she was a young girl; that from that time she had had no intercourse with any man except Cabán; that Juana had had several children by Cabán; that he knows that Prudencio was Cabán's son, because he had chosen him for his sponsor, and when they went to fetch the child he was in the house of Juana María Ramos; that he had always ad-

dressed Cabán as *"compadre"* and Cabán did the same with him.

Dolores Rivera, 60 years of age, was the person who had assisted Juana María when she gave birth to Prudencio, and she had done so by order of Cabán, who had paid her for her work.

Juan Borrero knows that Cabán lived with Juana Ramos about 30 years; that they had had several children, including Prudencio; that Cabán was the only man who had lived with Juana.

We have already referred to the testimony of Juan Pereira, who stated further that Cabán addressed Prudencio as "son," and that Prudencio called him "papa," and that the former used to give him his blessing as his *son.*

And, lastly, the plaintiff himself testifies giving ample details with respect to his relations with his natural father.

The evidence produced by the defendant tended to contradict some of the points of the testimony of the plaintiff's witnesses, such as that Cabán had led Prudencio to school, or had recommended Dr. Franco to cure him of a certain distemper. Other witnesses stated that although they had been on intimate terms with Cabán for many years they were not aware of his having had amorous relations with Juana María Ramos nor that Prudencio was his son. Regarding the allegations contained in the answer to the effect that the Succession of Cabán is not composed exclusively of Onorifera Cabán and that María Ramos, at the time of the conception of Prudencio Ramos, was a public woman, given over to a life of licentiousness, no evidence in support of these allegations was produced by the defendant at the trial.

The question, then, is not really one of contradictory evidence. Substantially the plaintiff's evidence has remained without contradiction. Omitting therefrom the points directly contradicted by the defendant's evidence and conceding that the latter should not be taken into account, yet even then

sufficient evidence would still be left to warrant a judgment sustaining the complaint.

It seems that the judge below did not base his decision on the fact that he considered the testimony of the witnesses for the defendant worthy of credence and the witnesses for the plaintiff as destitute of veracity, but on the fact that upon weighing together all the evidence it was not found, in his opinion, sufficient to show the deliberate intention of the father to acknowledge the son.

We believe his conclusion to be erroneous, because the evidence not only shows that the plaintiff is the son of Cabán and of María, conceived and born while both were unmarried, but that he had been publicly and privately acknowledged as such son. The relations of Cabán with María lasted many years. Cabán cared for Prudencio, even before he was born, by sending Dolores Rivera to attend María while she was in her travail, and then paying her for her services. Cabán asked Victoriano Latorre to stand sponsor for his son, Prudencio. Latorre accepted, and was thereafter addressed by Cabán as "*compadre.*" Cabán had publicly called Prudencio "son," while the latter called Cabán "father." Cabán had publicly given his blessing to his son, Prudencio, and in their business relations had addressed him a writing signed, "Your father, Juan T. Cabán."

The evidence is, then, so clear that it must be concluded, as we said at the outset, that the district judge committed manifest error in weighing the same, for which reason the judgment should be reversed and another rendered in its place by this Supreme Court granting the prayer of the complaint.

*Reversed.*

Chief Justice Hernández and Justices MacLeary, Wolf and Aldrey concurred.